IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| KENNETH R. ABRAHAM, | ) |
| --- | --- |
| Plaintiff, | ) ) ) |
| v. | ) Civ. No. 11-033-SLR ) |
| PERRY PHELPS, et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

At Wilmington this 9th day of May, 2011, having screened the case pursuant to 28 U.S.C. § 1915 and § 1915A;

IT IS ORDERED that plaintiff's request for counsel is denied without prejudice; plaintiff is allowed to proceed with retaliation and due process claims; and the remaining claims are dismissed as frivolous pursuant to 28 U.S.C. § 1915 and § 1915A, for the reasons that follow:

1. **Background.** Plaintiff Kenneth R. Abraham ("plaintiff"), an inmate housed at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this complaint pursuant to 42 U.S.C. § 1983.[1] He proceeds pro se and has been granted leave to proceed without prepayment of fees.

2. **Standard of Review.** This court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

3. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

4. "A separate standard for maliciousness is not as well established." *Abdul-Akbar v. Department of Corr.*, 910 F.Supp. 986 (D. Del.,1995), *aff'd*, 111 F.3d 125 (3d Cir. 1997). A court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the

action is an attempt to vex, injure, or harass the defendant. *Deutsch*, 67 F.3d at 1086. Other circuits have offered more objective instances of malicious claims. For example, a complaint is malicious when it "duplicates allegations of another [ ] federal lawsuit by the same plaintiff." *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993). A district court may dismiss a complaint as malicious if it threatens violence or contains disrespectful references to the court. *Crisafi v. Holland*, 655 F.2d 1305 (D.C. Cir. 1981). Additionally, a district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims. *Crisafi*, 655 F.2d at 1309; *Van Meter v. Morgan*, 518 F.2d 366 (8th Cir. 1975); *Duhart v. Carlson*, 469 F.2d 471 (10th Cir. 1972); *see also Banks v. Gillie,* Civ. No. 03-3098, 2004 WL 5807334 (E.D. La. Feb. 25, 2004) (duplicative and repetitive complaints are considered malicious for purposes of § 1915); *McGill v. Juanita Kraft Postal Serv.*, Civ. No. 03-1113-K, 2003 WL 21355439, at *2 (N.D. Tx. June 6, 2003) (complaint is malicious when it "'duplicates allegations of another pending federal lawsuit by the same plaintiff' or when it raises claims arising out of a common nucleus of operative facts that could have been brought in the prior litigation").

5. The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening

provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

6. A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 1949. When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiff has a "plausible claim for relief."[2] *Id.* at 211. In other words, the complaint must do more than allege plaintiff's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).

---

[2]A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

7. **Discussion**. Plaintiff, who filed this action pursuant to 42 U.S.C. § 1983, alleges violations of his constitutional rights and refers to two federal criminal statutes.[3] Defendants are sued in their individual and official capacities. Plaintiff seeks injunctive relief as well as compensatory and punitive damages.

8. Plaintiff raises claims against numerous defendants and uses an abbreviation system to identify them in the complaint. For example, Patrick Smith ("Smith") is referred to as "PS." Two defendants, however, are given the same abbreviation. Staff Lt. Hawkins ("Hawkins") is identified with an "H" as is C.O. Harris ("Harris"). Since it is unclear to whom "H" refers, all allegations directed against "H" will be stricken from the complaint as set forth in paragraphs 15, 16, 17, 19, and 26. Given the likelihood of confusion or error, and the unwieldiness when using the abbreviations to determine to whom the allegations are directed, the court will docket, but not consider future pleadings filed by plaintiff using the abbreviation system.

9. Plaintiff alleges that defendants Commissioner Carl Danberg ("Danberg") and Warden Phelps ("Phelps") failed to train and supervise personnel in the basic principle that laws apply inside the walls of the Delaware Department of Correction ("DOC"), and they created and condone a practice, custom, or policy of widespread abuse of inmates with no accountability. He also alleges that the grievance process is a farce.[4] Plaintiff

---

[3]There is no paragraph 24 in the complaint and it contains two paragraphs numbered 37.

[4]Plaintiff alleges that he notified Danberg and Phelps of his concerns regarding security housing unit ("SHU") law library access, as well as specific instances of retaliation against him. (D.I. 2 at ¶¶ 6, 7)

refers to the DOC atmosphere as "lie, lie, lie and cover-up wrongdoing."[5] (D.I. 2 at ¶¶ 5, 26)

10. Plaintiff was housed in SHU for two years, from October 12, 2007 through December 1, 2010, following a finding that he assaulted staff. He alleges that pursuant to DOC policy he was eligible for a transfer from SHU, spoke to a counselor regarding a transfer in October or November 2009, and was informed that he would be classified to the "Greentree Program" per his sentencing order. Plaintiff was advised that the classification committee classified him to the "Greentree Program" but alleges that Phelps "did an override" keeping him in SHU in contravention of his sentencing order and in retaliation for grievances and lawsuits he filed, contacting the media, and attempting to have DOC personnel arrested. With regard to the "Greentree Program," plaintiff alleges that the acts of Phelps, Smith and Bryan resulted in a breach of, and interference with, contract when they prevented plaintiff from completing the plea agreement in his Delaware criminal case.[6] (Id. at ¶¶ 11-14, 32)

11. Plaintiff alleges that Lt. Savage ("Savage"), Deputy Warden David Pierce ("Pierce"), Major James Scarborough ("Scarborough"), Henry, Capt. Michael McCreanor ("McCreanor"), Mohr, Bryan, and Smith placed him in "the hole" for eighteen days beginning on October 6, 2009 without reason, cause or justification. Plaintiff alleges

---

[5]To support his claim against Danberg and Phelps, plaintiff refers to statements made by defendants Michael Bryan ("Bryan"), Nicolas Mohr ("Mohr"), C/O Henry ("Henry"), and Harris wherein they allegedly discussed what to say in response to claims by inmates of excessive force, theft, and the like. (Id. at ¶ 26)

[6]The breach of contract allegations specifically refer to the conduct of Phelps, Smith, and Bryan as alleged on paragraphs 6, 7, 11, 12, 13, and 14 of the complaint. (Id. at ¶ 32) Smith and Bryan, however, are not mentioned in said paragraphs.

that his placement in "the hole" was in retaliation for his grievances, lawsuits, and ongoing efforts to have correctional officers arrested. Plaintiff was told by an unnamed correctional officer, "this will teach you about suing C.O.'s." Later plaintiff was told that he was housed in "the hole" pending an open cell on B-tier.[7] (*Id.* at ¶¶ 15-19)

12. Plaintiff alleges that, beginning on November 12, 2007, defendants Brian Engrem ("Engrem") and Mike Little ("Little") engaged in an ongoing, concerted effort to hinder his litigation against DOC personnel in failing to provide access to the law or persons trained in the law and actively seeking to obstruct, hinder, impede, delay, and defeat his litigation. Plaintiff alleges that harm occurred when Little and Engrem failed to provide requested legal materials and he filed a futile claim in Superior Court that caused him to incur costs. Further, he alleges that Engrem and Little conspired with Smith, Bryan, Mohr, Merson and others to steal his legal property (*Id.* at ¶ 20, 21, 21(h), 22, 23, 30)

13. On January 10, 2009, Lindsey, Mohr, and Bryan entered plaintiff's cell to conduct a shake-down. Plaintiff alleges that Lindsey, Mohr, and Bryan acted together and in collusion with Smith, Little, and Engrem. Plaintiff alleges the shake-down was a pretext to interfere with his litigation and in retaliation for his filing grievances and lawsuits against correctional officers and his efforts to have correctional officers arrested. Merson was present, and Mohr and Bryan spent over an hour going through plaintiff's legal papers. They took some of plaintiff's legal materials, as well as other

---

[7]Plaintiff alleges defendants violated 18 U.S.C. § 241 and § 242, civil rights statutes contained in the federal criminal code. The decision of whether to prosecute, and what criminal charges to bring, generally rests with the prosecutor. See *United States v. Batchelder*, 442 U.S. 114, 124 (1979).

-7-

items.[8] Plaintiff alleges that, as a direct result of the actions of January 10, 2009, he was unable to proceed to amend his complaint in Civ. No. 07-593-SLR, following the court's granting him leave to amend. (*Id.* at ¶ 27-29)

14. Plaintiff alleges Smith, Bryan, Mohr, Engrem, and Little filed false disciplinary reports for retaliatory purposes and that the aggregate actions of Mohr, Bryan, Phelps, Little, Merson, Smith, Engrem, Henry were intentional, with malice and retaliatory motive. It is specifically alleged that Mohr harassed and threatened plaintiff on a daily basis, used excessive force on or about August 14, 2009 when he slammed a metal gate into plaintiff's ankle and attempted to strike plaintiff in the back with the gate, and engaged in an additional retaliatory act on May 29, 2009, when Mohr took plaintiff's personal and legal property and then wrote a false disciplinary report against plaintiff, said retaliatory conduct being a result of plaintiff's statement to Mohr on January 10, 2009, that he promised to sue Mohr and Bryan. (*Id.* at 31, 33-36, 41)

15. Shortly after Mohr and Smith wrote the "false" May 29, 2009 disciplinary report, it was approved by Smith. A hearing was held, Smith was the hearing officer, and plaintiff was found guilty and punished. Plaintiff alleges that he was entitled to a neutral or impartial hearing officer. He further alleges that Smith and Mohr conspired to violated his civil rights.[9] (*Id.* at 38-40)

16. Plaintiff alleges that Merson knowingly filed false affidavits in Civ. No. 08-311-SLR in an attempt to obstruct, hinder, delay and defeat plaintiff's litigation against

---

[8] *See* n.7, *supra.*

[9] *See* n.7, *supra.*

DOC personnel.[10] According to plaintiff, Merson's actions violated his right to access the courts and Merson conspired to violate his constitutional rights. (*Id.* at ¶ 37)

17. **Pleading deficiencies**. Some of plaintiff's claims are deficiently pled. For example the failure to train and supervise directed against Danberg and Phelps is conclusory.[11] Similarly, plaintiff's dispersal of the word "conspiracy" throughout the complaint is not supported by the facts and is conclusory. See *Iqbal*, 129 S.Ct. at 1949 (stating that a complaint will not suffice if it "offers [merely] 'labels and conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Twombly*, 550 U.S. at 555, 557). Indeed, merely reciting an element of a cause of action or making a bare conclusory statement is insufficient to state a claim. See *Iqbal*, 129 S.Ct. at 1949. Finally, the complaint names John Doe Members of a so-called Quality of Life Committee but there are no allegations directed against the Doe defendants. Because the foregoing claims do not meet the pleading requirements of *Iqbal* and Twombly, the court will dismiss them pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

18. **Eleventh Amendment immunity**. Plaintiff raises claims against the DOC in paragraphs 8 and 42. Plaintiff's claims against the DOC are barred by the State's Eleventh Amendment immunity. See *MCI Telecom. Corp. v. Bell Atl. of Pa.*, 271 F.3d

---

[10]See n.7, *supra*.

[11]Although the complaint states "not based on respondeat superior," the complaint as pled does just that as to Danberg and Phelps. As is well-known, "[b]ecause vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948 (2009). Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 129 S.Ct. at 1949.

491, 503 (3d Cir. 2001). The Eleventh Amendment of the United States Constitution protects an unconsenting State or state agency, such as the DOC, from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89 (1984); *Edelman v. Jordan,* 415 U.S. 651 (1974). The State has not waived its immunity from suit in federal court, and although Congress can abrogate a State's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *Brooks-McCollum v. Delaware,* 213 F. App'x 92, 94 (3d Cir. 2007) (not published) (citations omitted). In addition, dismissal is proper because a State is not a person for purposes of § 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989); *Calhoun v. Young,* 288 F. App'x 47 (3d Cir. 2008) (not published). The DOC is immune from suit pursuant to the Eleventh Amendment and, therefore, the court will dismiss it as a defendant pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

19. The Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Ex parte Young,* 209 U.S. 123 (1908). "This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." *Frew v. Hawkins,* 540 U.S. 431, 437 (2004) (internal citations omitted). "Federal courts may not award retrospective relief, for instance money damages or its equivalent, if the State invokes its immunity." *Id.* (citations omitted). Accordingly, the court will dismiss the § 1983 claims against all state defendants in their official capacities for monetary damages, inasmuch as claims

made against state officials in their official capacities are treated as claims made against the State itself. *Will v. Michigan Dep't of State Police*, 491 U.S. at 71.

20. **Housing/Classification**. Plaintiff complains that he was sent to "the hole" for an eighteen day period without reason and was housed in SHU for an approximate two year period following a finding that he assaulted staff. His placement in SHU did not allow for a classification to the "Greentree Program." To the extent plaintiff attempts to raise a due process claim, the claim fails.

21. In reviewing an alleged due process violation, it must be determined whether the alleged violation implicates a constitutionally protected property or liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). "Liberty interests protected by the Fourteenth Amendment may arise from two sources-the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). In a prison setting, States may create protected liberty interests. These interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484 (internal citations omitted). Notably, neither Delaware law nor DCC regulations create a liberty interest in a prisoner's classification within an institution. *See* 11 Del. C. § 6529(e). Moreover, "'[a]s long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison

authorities to judicial oversight.'" *Hewitt*, 459 U.S. at 468 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)).

22. It has thus been determined that the transfer of a prisoner from one classification to another is unprotected by "'the Due Process Clause in and of itself,'" even though the change in status involves a significant modification in conditions of confinement. *Hewitt*, 459 U.S. at 468 (citation omitted); *Moody v. Daggett*, 429 U.S. 78 (1976 ); *see also Lott v. Arroyo*, 785 F.Supp. 508, 509 (E.D. Pa. 1991) (plaintiff transferred from group home to correctional facility had no constitutionally enforceable right to participate in work release program); *Brown v. Cunningham,* 730 F.Supp. 612 (D. Del.1990) (plaintiff's transfer from general population to administrative segregation, without being given notice and opportunity to challenge it, was not violation of plaintiff's liberty interest). While the conditions in "the hole" as alleged by plaintiff are more onerous than in SHU, the transfer from one classification to another did not violate his due process rights. Accordingly, the decision to place plaintiff in "the hole" for a short period of time or in SHU for a two year period cannot be viewed as falling outside the scope of "the sentence imposed upon him [or] otherwise violative of the Constitution."

23. Plaintiff cannot establish a claim for violation of a liberty interest created by the Due Process Clause or state law. His due process claim has no arguable basis in law or in fact and, therefore, is dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

24. **Interference or breach of contract.** Plaintiff alleges the actions of Phelps, Smith, and Bryan prevented him from completing the terms of his plea agreement and

resulted in breach of or interference with his contract (i.e., the plea agreement). Because plaintiff previously raised this issue in Civ. No. 08-811-SLR, raising it a second time results in a determination of maliciousness. In addition, plaintiff raised a similar issue before the Delaware Supreme Court, and it held that plaintiff's dismissal from the "Greentree Program" did not constitute a breach of his plea agreement with the State of Delaware. *Abraham v. State*, 968 A.2d 491, 2009 WL 387094, at *1 (Del. 2009) (table decision). The claim is malicious and barred by reason of res judicata. Therefore, the claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

25. **Access to the courts**. Plaintiff alleges that Engrem and Little have hindered his litigation against DOC personnel. Plaintiff also claims that they did not provide him with legal materials and, as a result, he filed a futile claim in state court and incurred costs. Finally, he alleges that Merson attempted to defeat or hinder litigation in Civ. No. 08-311-SLR in the filing of false affidavits.

26. Prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (holding that prisons must give inmates access to law libraries or direct legal assistance). "Many courts have found a cause of action for violation of the right of access stated where it was alleged that prison officials confiscated and/or destroyed legal materials." *Zilich v. Lucht*, 981 F.2d 694, 695 (3d Cir. 1992) (citations omitted).

27. A violation of the First Amendment right of access to the courts is only established where a litigant shows that he was actually injured by the alleged denial of

access. The actual injury requirement is a constitutional prerequisite to suit. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (explaining that the constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"). An actual injury is shown only where a nonfrivolous, arguable claim is lost. *Christopher*, 536 U.S. at 415. To state a valid retaliation claim, a prisoner must allege: "(1) constitutionally protected conduct; (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *See Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003).

28. The record does not reflect a violation of plaintiff's right to access the courts or actual injury as a result of any alleged denial. It is evident from plaintiff's numerous filings in this case and others he filed in the court that he has been able to prosecute his civil lawsuits. For the above reasons, the court will dismiss the access to the court claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

29. **Personal property**. Plaintiff alleges that numerous defendants stole his legal and personal property. A prisoner's due process claim based on random and unauthorized deprivation of property by a state actor is not actionable under § 1983, whether the deprivation is negligent or intentional, unless there is no adequate post-deprivation remedy available. *See Parratt v. Taylor,* 451 U.S. 527, 542 (1981), *overruled on other grounds by,* 474 U.S. 327 (1986); *Hudson v. Palmer,* 468 U.S. 517, 533 (1984). Plaintiff has available to him the option of filing a common law claim for

conversion of property. Inasmuch as Delaware law provides an adequate remedy for plaintiff, he cannot maintain a cause of action pursuant to § 1983. *See Hudson*, 468 U.S. at 535; *Nicholson v. Carroll*, 390 F. Supp. 2d 429, 435 (D. Del. 2005); *Acierno v. Preit-Rubin, Inc.*, 199 F.R.D. 157 (D. Del. 2001) (other citations omitted). The claims lack an arguable basis in law or in fact and must, therefore, be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

30. **Request for counsel.** Plaintiff's request for counsel is **denied** without prejudice. (D.I. 5) Plaintiff requests counsel on the grounds that DOC personnel have mixed and jumbled his thousands of pieces of paper. Hence, he cannot locate the determinative cases, and he is having difficulty adequately sorting his papers. In addition, plaintiff states that he will have difficulty serving one defendant who is no longer employed by the DOC, counsel would aid in investigating the facts, plaintiff does not know the rules of evidence and is unfamiliar with the rules of this court, and he is unable to request or issue subpoenas to obtain necessary documents.

31. A pro se litigant proceeding in forma pauperis has no constitutional or statutory right to representation by counsel. *See Ray v. Robinson*, 640 F.2d 474, 477 (3d Cir. 1981); *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). It is within the court's discretion to seek representation by counsel for plaintiff, and this effort is made only "upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting . . . from [plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984); *accord*

*Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law).

32. After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel, including:

> (1) the plaintiff's ability to present his or her own case;(2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses.

*Tabron*, 6 F.3d at 155-57; *accord Parham*, 126 F.3d at 457; *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).

33. Upon consideration of the record, the court is not persuaded that counsel is warranted at this time. Plaintiff was a licensed attorney and has demonstrated an ability to present his claims; there is no evidence that prejudice will result in the absence of counsel. Finally, this case is in its early stages. Should the need for counsel arise later, plaintiff may renew his request.

34. **Conclusion.** For the foregoing reasons, the court: (1) denies without prejudice plaintiff's request for counsel (D.I. 5); (2) strikes the claims against Hawkins and Harris set forth in paragraphs 15, 16, 17, 19, and 26 of the complaint; (3) will docket, but not consider future pleadings using the abbreviation system; (4) allows plaintiff to proceed with the retaliation claims against defendants Phelps, Savage, Pierce, Scarborough, McCreanor, Mohr, Bryan, Smith, Lindsey, Little, and Engrem found in paragraphs 12, 13, 15, 16, 17, 18, 27, 28, 31, 33, 34, 35, 36, 41 and the

procedural due process claim against Smith found in paragraphs 38, 39, and 40; and (6) dismisses all remaining claims and defendants raised against defendants Hawkins, Harris, Merson, the DOC, and John Does and all claims against defendants in their official capacities, to the extent plaintiff seeks monetary damages, pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

IT IS FURTHER ORDERED that:

1. The clerk of the court shall cause a copy of this order to be mailed to plaintiff.

2. Pursuant to Fed. R. Civ. P. 4(c)(2) and (d)(2), plaintiff shall provide to the clerk of the court an **original** "U.S. Marshal-285" form for **the remaining defendants, Perry Phelps, Lt. Savage, David Pierce, James Scarborough, Michael McCreanor, Nicholas Mohr, Michael Bryan, Patrick Smith, C/O Lindsey, Mike Little, and Brian Engrem, as well as for the Attorney General of the State of Delaware**, 820 N. FRENCH STREET, WILMINGTON, DELAWARE, 19801, pursuant to 10 Del. C. § 3103(c). **Plaintiff shall provide the court with copies of the complaint, supporting memorandum anc exhibits (D.I. 2, 4) for service upon remaining defendants and the attorney general. Plaintiff is notified that the United States Marshal Service ("USMS") will not serve the complaint until all "U.S. Marshal 285" forms and required copies of the complaint, memorandum and amended complaint have been received by the clerk of the court. Failure to provide the "U.S. Marshal 285" forms and required copies for the remaining defendants and the attorney general within 120 days of this order may result in the complaint being dismissed or defendants being dismissed pursuant to Fed. R. Civ. P. 4(m).**

3. Upon receipt of the form(s) required by paragraph 2 above, the USMS shall forthwith serve a copy of the complaint, this order, a "Notice of Lawsuit" form, the filing fee order(s), and a "Return of Waiver" form upon each of the defendants so identified in each 285 form.

4. A defendant to whom copies of the complaint, this order, the "Notice of Lawsuit" form, and the "Return of Waiver" form have been sent, pursuant to Fed. R. Civ. P. 4(d)(1), has thirty days from the date of mailing to return the executed waiver form. Such a defendant then has sixty days from the date of mailing to file its response to the complaint, pursuant to Fed. R. Civ. P. 4(d)(3). A defendant residing outside this jurisdiction has an additional thirty days to return the waiver form and to respond to the complaint.

5. A defendant who does not timely file the waiver form shall be personally served and shall bear the costs related to such service, absent good cause shown, pursuant to Fed. R. Civ. P. 4(d)(2). **A separate service order will issue in the event a defendant does not timely waive service of process.**

6. No communication, including pleadings, briefs, statement of position, etc., will be considered by the Court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

7. **NOTE:** \*\*\* When an amended complaint is filed prior to service, the Court will **VACATE** all previous Service Orders entered, and service **will not take place**. An amended complaint filed prior to service shall be subject to re-screening pursuant to 28 U.S.C. §1915(e)(2) and § 1915A(a). \*\*\*

8. **Note:** \*\*\* Discovery motions and motions for appointment of counsel filed prior to service will be dismissed without prejudice, with leave to refile following service. \*\*\*

_____
UNITED STATES DISTRICT JUDGE